Delton R. WHITNEY, Plaintiff and Appellant,

v.

AGSCO DAKOTA, Employer, and Northbrook Property and Casualty, Insurer, Defendants and Appellees.

No. 16757.

Supreme Court of South Dakota.

Argued Jan. 10, 1990.

Decided April 4, 1990.

William Jason Groves, Rapid City, for plaintiff and appellant.

Gary P. Thimsen of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendants and appellees.

MILLER, Justice.

This is a worker's compensation case in which we hold that (1) the Department of Labor failed to properly reserve jurisdiction over the issue of permanent total disability, and (2) a showing of "economic" change does not qualify as a "change in condition" within the contemplation of SDCL 62-7-33, which statute allows Department to reopen and review an original award of disability. We thus affirm the circuit court's reversal of Department's ruling.

## FACTS

Appellant Delton R. Whitney began working for appellee AGSCO Dakota in March, 1968. AGSCO was a quartz stone screening operation. Quarried rock would be brought in to a plant for the purpose of sizing. Whitney worked for AGSCO at their plant in Pringle, South Dakota.

In 1974, Whitney had back surgery as a result of an automobile accident. The surgery was performed in Rapid City by Dr. Dale Berkebile. Whitney successfully recovered and went back to work for AGSCO.

On April 10, 1984, Whitney again injured his back. This injury occurred while working on the job for AGSCO. It required a second surgery in September, 1984, which was also performed by Dr. Berkebile.

As a result of the AGSCO injury, Whitney received worker's compensation benefits which paid all medical bills related thereto. (During the period of time between the occurrence of the injury in April and the operation in September, Whitney continued to work, off and on, receiving full salary.) In November, 1984, Dr. Berkebile gave Whitney permission to return to work, performing only light duty. The work Whitney had performed prior to his injury included assisting with the handling of 100-pound bags, running a forklift and going up and down stairs doing machine and maintenance checks. After the surgery, he would operate the forklift on occasion for short periods of time in addition to performing only those tasks within his limited range of physical ability. During this time, he was drawing the same salary he had prior to the injury and surgery.

In November, 1985, AGSCO sold their plant to Pacer Corporation. The nature of the operation remained the same, but Pacer did not go into full operation until approxi-

mately one year later. Whitney remained employed by Pacer on a part-time, "as needed" basis.

In April, 1986, Pacer required a physical examination of all their employees, including Whitney. Whitney was diagnosed by two physicians as having silicosis, a lung disease. As a result of this diagnosis, rather than because of his back problems, Pacer did not hire Whitney on a full-time basis.

Prior to being diagnosed with silicosis and being laid off by Pacer, Whitney was able to reach an agreement with AGSCO and their worker's compensation insurance company regarding the April, 1984, injury. The agreed stipulation was prepared by his lawyer and approved by Department. This agreement provided for a lump-sum payment to Whitney by AGSCO's worker's compensation carrier in an amount which equals fifteen percent impairment of the whole body as determined by Dr. Berkebile. (This was later modified by Dr. Berkebile to twenty percent and it was so paid by AGSCO's carrier.) The agreement also specifically provided for future payments if the "percent of disability increases as a result of such [work-related] injury" or "[i]f additional medical treatment is required in the future as a result of such injury[.]"

Subsequent to his termination with Pacer, Whitney attempted to find a job within his physical limitations. He was unsuccessful in his efforts. Consequently, although admitting there has been no change in his physical condition concerning his back injury, he petitioned Department seeking to reopen his original claim. Department, in essence, held that the stipulation and order did not preclude his reopening the claim for disability. The circuit court reversed. We affirm the circuit court.

## DECISION

### ISSUE I

WHETHER DEPARTMENT RETAINED JURISDICTION OF THE ISSUE OF PERMANENT TOTAL DISABILITY.

SDCL 1–26–37 states:

An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo.

"In appeals from decisions of administrative agencies, this court makes the same review of the agency's decision as did the circuit court." *Hanson v. Penrod Constr. Co.*, 425 N.W.2d 396, 397 (S.D.1988); *Lee v. Dept. of Health*, 411 N.W.2d 108 (S.D. 1987).

■ Whitney contends that Department has continuing jurisdiction to determine the issue of an award of permanent total disability between the parties because that issue was not addressed in the stipulation and order. This requires us to address a question of law and makes the decision of the circuit court fully reviewable. *Hanson, supra.*

In 1985, the stipulation entered into between the parties agreed to, and AGSCO's carrier paid, a lump-sum amount of $11,-138.40, which equals a fifteen percent impairment of the whole body as determined by Dr. Berkebile. (As was noted earlier, this was later modified by Dr. Berkebile to twenty percent, which was then paid by the carrier.) The document, prepared by Whitney's counsel, was styled a "Stipulation and Order" and contains a Department Order merely reciting that it approved the foregoing agreement. At the time the stipulation was entered into, Whitney was working for Pacer Corporation on a part-time basis and the physical limitations of his back were known to everyone. A few months thereafter, Pacer refused to hire him on a full-time basis because he was diagnosed as having silicosis, rather than because of his back problems. It was not until after Pacer refused to hire him that he began to look elsewhere for employment. He claims that, because he was unable to find employment, he is entitled to

payment for permanent total disability from AGSCO under the odd-lot doctrine. *See Barkdull v. Homestake Mining Co.,* 317 N.W.2d 417 (S.D.1982).

By virtue of SDCL 62–7–33, Department has continuing jurisdiction to adjust any payment from the original injury based upon a change of condition occurring since the last award. *Call v. Ben. & Protec. Order of Elks,* 307 N.W.2d 138 (S.D.1981); *Middleton v. City of Watertown,* 70 S.D. 158, 16 N.W.2d 39 (1944). Where the claimant fails to show a change in condition, a final compensation award becomes res judicata with regard to the condition of the injured employee at the time the award is entered. *Call, supra; Stowsand v. Jack Rabbit Lines,* 75 S.D. 11, 58 N.W.2d 298 (1953). However, we have recognized that administrative agencies have the power to reserve jurisdiction. *Call, supra.* We apply the following analysis in these situations.*

> If, either by the form of the [department's] order or by express statutory provision, continuing jurisdiction has been reserved over an award, it does not achieve finality and is therefore not subject to the limitations on reopening applicable to final awards, such as the requirement of showing a change of condition.

307 N.W.2d at 139 (citing 3 Larson *Workmen's Compensation Law* § 81.53 (1976)).

The stipulation and order contains no provision in form or otherwise, addressing retention of jurisdiction over issues not addressed and more specifically over the issue of permanent total disability. However, the agreement does provide in salient part:

> If Employee's percent disability increases *as a result of such working injury* in the future, Employer shall be responsible to pay Employee such additional compensation as is medically determined to be applicable and in compliance with the statutes in affect at the time of the initial injury.

> If additional medical treatment is required in the future *as a result of such injury,* Employer shall be obligated to pay such future medical expenses[.] (Emphasis added.)

We generally agree with the rationale of the circuit court with regard to the interpretation of the Stipulation and Order that Whitney and Department failed to properly reserve Department's jurisdiction with respect to any further claim for permanent total disability other than that related to the April, 1984, injury. However, as the trial court stated:

> The language in the Stipulation and approval did not lack finality. On the contrary, the Stipulation clearly permitted increased benefits only if Whitney's percent disability increased or if he required further medical treatment as a result of his working injury.

The award did not contain language which left open a pending issue. An agreed stipulation entered into between employer and employee, which is filed and approved by Department, may have the effect of a final determination. *Salmon v. Denhart Elev.,* 72 S.D. 110, 30 N.W.2d 644 (1948). We conclude that Department's failure to reserve jurisdiction, especially when considering the specific provisions of the stipulation, renders those issues res judicata absent a showing of change of condition. *Call, supra; Stowsand, supra.*

## ISSUE II

### WHETHER A CLAIMANT MUST SHOW PHYSICAL CHANGE OF CONDITION TO REOPEN AN AWARD.

SDCL 62–7–33 states:

> Any payment, including medical payments under § 62–4–1, made or to be made under this title may be reviewed by the department of labor pursuant to § 62–7–12 at the written request of the employer or of the employee and on such review payments may be ended, diminished, increased or awarded subject to the

---

* In *Call v. Ben. & Protec. Order of Elks,* 307 N.W.2d 138 (S.D.1981), an order was entered denying temporary or permanent total disability but jurisdiction was specifically retained as to the permanent total disability.

maximum or minimum amounts provided for in this title, if the department finds that a *change in the condition* of the employee warrants such action. (Emphasis added.)

 Initially, we point out that the record indicates Whitney admitted that his "physical" condition has not changed with respect to his back injury. Therefore, it is clear that there has been no "physical" change in condition. However, Whitney contends that "change in condition" was not only intended to mean "physical" but also "economic" change when reviewing reopening an award for permanent total disability.

Our cases indicate the contrary, *Stender v. City of Miller*, 82 S.D. 334, 145 N.W.2d 913 (1966); *Stowsand, supra; Salmon, supra,* as do various other jurisdictions. *See also University Mechanical Contractors v. Industrial Commission*, 135 Ariz. 365, 661 P.2d 215 (1983); *Lucero v. Climax Molybdenum Co.*, 732 P.2d 642 (Colo.1987); *Petrie v. Industrial Commission*, 160 Ill. App.3d 165, 111 Ill.Dec. 858, 513 N.E.2d 104 (1987); *Continental Airfilter Co. v. Blair*, 681 S.W.2d 427 (Ky.1984); *Wilson Concrete Co. v. Rork*, 216 Neb. 447, 343 N.W.2d 764 (1984).

In *Lucero, supra,* the Colorado court recognized that a few jurisdictions allow reopening without a showing of a change in "physical" condition due to the fact the statutes in those states generally imply or provide explicitly for that result. *See, e.g., Hunt v. Industrial Commission*, 107 Ariz. 569, 490 P.2d 575 (1971); *King v. Piedmont–Warner Development*, 177 Ga.App. 176, 338 S.E.2d 758 (1985); *Mace v. Merchants Delivery Moving & Storage*, 221 Va. 401, 270 S.E.2d 717 (1980). The Colorado court additionally noted that, generally, where state statutes provide only for reopening due to a "change of conditions," courts in other states have construed that to mean a change of "physical" condition. *See, e.g., Osborne v. Johnson*, 432 S.W.2d 800, 804–5 (Ky.App.1968); *University Mechanical Contractors, supra; Petrie, supra; Wilson Concrete, supra.*

"Change in conditions," as that phrase is used in the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.S. § 922 (1986), has been interpreted by the federal courts to mean a change in the "physical" condition of the claimant. *See Atlantic Coast Shipping Co. v. Golubiewski*, 9 F.Supp. 315, 317 (D.Md.1934); *Verderane v. Jacksonville Shipyards, Inc.*, 772 F.2d 775, 780 (11th Cir.1985); *General Dynamics Corp. v. Director, Office of Workers Compensation Program*, 673 F.2d 23, 25 (1st Cir.1982); *Burley Welding Works Inc. v. Lawson*, 141 F.2d 964, 966 (5th Cir.1944); and *Bay Ridge Operating Co. v. Lowe*, 14 F.Supp. 280, 281 (S.D.N.Y.1936). As the court in *Lucero* explained:

> The rationale behind these [federal] cases is a recognition of the fundamental principle that the workers' compensation laws were designed to compensate for diminishment of a worker's earning capacity due to specified physical or mental injuries. (citations omitted) The laws are not intended to protect against diminishment of a worker's earning capacity due to mass layoffs and other external fluctuations in economic conditions. Workers' compensation should not become, by way of strained construction, unemployment insurance.

732 P.2d at 647. We agree.

"A statute must be construed according to its manifest intent, and such intent must be derived from the statute as well as other enactments relating to the same subject." *In Re Cancel. of Stabio Ditch Water Right*, 417 N.W.2d 391, 394 (S.D.1987); *Simpson v. Tobin*, 367 N.W.2d 757 (S.D. 1985). "Courts must apply the law as the legislature enacted it, and must search for legislative intent as shown by what the legislature said rather than what it should have said or might have said." *Stabio Ditch Water Right, supra* at 394; *State v. Galati*, 365 N.W.2d 575 (S.D.1985). Our legislature certainly did not intend that the benefits to be derived from the worker's compensation law be an absolute financial substitute for salaried employment.

Finally, this court has addressed this issue in a pre-*Barkdull* decision, *Stender, supra.* Therein we stated:

A change in condition refers to a condition different from that which existed when the award was made. It must be a material and substantial change. As a general rule, *it must be a change in the physical condition of the employee*, affecting his earning capacity. (Emphasis added.)

82 S.D. at 338, 145 N.W.2d at 915. This remains the law today. We will leave it to the legislature to decide whether economic conditions should affect this issue in the future. *See Lucero, supra.*

Because we require a change of condition to be "physical," and since Whitney admitted that his physical condition has not changed, we conclude that he has not met his burden to show a change of condition to allow a reopening of the award.

Although Whitney has presented other issues, we conclude that they are mooted by our holdings above.

Affirmed.

All the Justices concur.