2000 SD 81

**Debra L. KERMMOADE, Claimant and Appellee,**

v.

**QUALITY INN, Employer and Appellant,**

and

**Perkins Family Restaurant/Club Valotte, Employers and Appellees,**

and

**St. Paul Fire & Marine Ins. Co., Insurer and Appellant.**

and

**Wausau Insurance Company, Insurer and Appellee.**

**Nos. 21146, 21178.**

Supreme Court of South Dakota.

Argued Feb. 16, 2000.

Decided June 21, 2000.

584

William Jason Groves, Margo Tschetter Julius of Groves, Julius & Simpson, Rapid City, South Dakota, Attorneys for appellee Kermmoade.

Gregory G. Strommen, Patricia A. Meyers of Costello, Porter, Hill, Heisterkamp, Bushnell and Carpenter, Rapid City, South Dakota, Attorneys for appellants.

Craig A. Pfeifle of Lynn, Jackson, Shultz and Lebrun, Rapid City, South Dakota, Attorneys for appellees Perkins/Club Valotte and Wausau Insurance Company.

AMUNDSON, Justice.

[¶ 1.] Quality Inn and its workers' compensation insurer, St. Paul Fire & Marine Insurance Company (St.Paul) appeal the circuit court's affirmance of the Depart-

ment of Labor's (Department) granting of summary judgment in favor of Debra Kermmoade (Kermmoade). Perkins Family Restaurant (Perkins) and Wausau Insurance Company (Wausau) filed a notice of review as to whether the referee erred in refusing to grant summary judgment in their favor because the issue was moot. We affirm in part, reverse and remand in part.

## FACTS

[¶ 2.] Kermmoade, a/k/a Debra Richter, became employed as a bartender at the Club Valotte in Rapid City, South Dakota in 1988. Club Valotte is a hotel bar/lounge located in the Ramada Inn hotel. In addition to the Club Valotte, Perkins restaurant, which was owned by Omega Foods, Inc., also adjoins the Ramada Inn. The Ramada Inn was owned and operated by the Retsel Corporation (Retsel). Retsel leased the Club Valotte lounge property to Don LaChapelle and the Perkins property to Omega Foods. Retsel also owned another hotel called the Quality Inn. Quality Inn was insured by St. Paul, Perkins was insured by Wausau, and LaChapelle[1] did not have insurance on Club Valotte.

[¶ 3.] On December 8, 1988, Kermmoade slipped and fell on ice while carrying out garbage during her employment with Club Valotte.[2] Kermmoade reported her injury to her direct supervisor Jackie Vanden-Hoek (VandenHoek), who was the manager of both Club Valotte and Perkins. Kermmoade was told by VandenHoek to obtain an injury report from the front desk of the hotel. Kermmoade completed the injury form and returned it to Vanden-

Hoek. On January 10, 1989, Elizabeth Massa (Massa), the sales manager for Retsel, prepared an "Employer's First Report of Injury" and forwarded the report to St. Paul, the insurer of Quality Inn. Massa's report stated that Kermmoade's employer was "Club Valotte—Retsel Corporation." Neither VandenHoek nor Kermmoade reviewed Massa's report before she sent it to St. Paul.

[¶ 4.] On February 14, 1989, St. Paul claim representative Sheri Dowden (Dowden) and Kermmoade signed an "Agreement as to Compensation (agreement)," which had been drafted by St. Paul. In the agreement, St. Paul had listed Kermmoade's employer as "Quality Inn" not "Club Valotte." Neither Kermmoade nor Dowden caught the error prior to the signing.

[¶ 5.] A memorandum of the agreement was filed with the Department of Labor (Department) pursuant to SDCL 62–7–5.[3] Department did not disapprove the agreement; therefore, after twenty days, it was approved by operation of law and was enforceable. St. Paul has made workers compensation benefit payments to Kermmoade under this agreement since its approval.

[¶ 6.] On January 31, 1995, six years after Kermmoade first began receiving benefits from St. Paul, she filed a petition for hearing with Department seeking odd lot benefits as a result of the worsening of her 1988 work-related accident. St. Paul and Quality Inn filed their answers admitting that Kermmoade was an employee of Quality Inn. Approximately one and one-half years later, Quality Inn and St. Paul

1. At the time this action commenced, LaChapelle was deceased.

2. Kermmoade's injury consisted of a twisted right knee resulting in a torn ligament and cartilage.

3. Under SDCL 62–7–5, prior to its 1991 amendment, the statute provided:
   If the employer and employee reach an agreement in regard to the compensation under this title, a memorandum thereof shall be filed with the department by the employer or employee, and unless the department shall, within twenty days, notify the employer and employee of its disapproval of the agreement by registered or certified letter sent to their addresses as given in the memorandum filed, the agreement shall stand as approved and be enforceable for all purposes under the provisions of this title.

filed an amended answer claiming that Club Valotte and Perkins were the actual employer and Perkins' insurer, Wausau, was the insurer liable for Kermmoade's workers' compensation benefits. Kermmoade subsequently opposed the amended answer claiming that the agreement was "res judiciata." Department allowed the amended answer and Perkins, Club Valotte and Wausau were added as parties in this action.

[¶ 7.] Quality Inn and St. Paul moved for summary judgment claiming that Kermmoade was not an employee of Quality Inn. Kermmoade filed a cross-motion for partial summary judgment on the employment status. Perkins and Wausau also filed a motion for summary judgment. Department denied Quality Inn's and St. Paul's motion, but granted Kermmoade's on the basis that the agreement was "res judicata" as to compensability and employee status. Department also denied Perkins' and Wausau's motion on the grounds that based upon its disposition of the employment status issue, it was moot. The decision was appealed to the circuit court, Seventh Judicial Circuit, Pennington County, South Dakota, and was affirmed.

[¶ 8.] Quality Inn and St. Paul appeal, raising the following issues:

1. Whether Department's Form 110 Agreement as to Compensation is res judicata as to Kermmoade's status as an employee even though an insurer's consent was given under an undisputed mistake of fact.

2. Does Department have jurisdiction to determine insurance coverage issues in this matter.

[¶ 9.] Perkins, Wausau and Club Valotte filed a notice of review, raising the following issue:

3. Whether Department erred in refusing to grant summary judgment to Perkins and Wausau, when all parties agree that Perkins and Wausau are not appropriate parties in this action.

## STANDARD OF REVIEW

[¶ 10.] It is well settled that "[o]ur standard of review from decisions of administrative agencies is governed by SDCL 1–26–37." *Helms v. Lynn's, Inc.,* 1996 SD 8, ¶ 9, 542 N.W.2d 764, 766. This statute provides:

> An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo.

SDCL 1–26–37 (1992). Under this standard, "[t]his Court 'makes the same review of the administrative agency's decision as did the circuit court, unaided by any presumption that the circuit court's decision was correct.'" *Cheyenne River Sioux Tribe Tel. Auth. v. Public Util. Comm. of South Dakota,* 1999 SD 60, ¶ 12, 595 N.W.2d 604, 608 (quoting *Zoss v. United Bldg. Ctrs., Inc.,* 1997 SD 93, ¶ 6, 566 N.W.2d 840, 843 (citations omitted)). When the issue is a question of fact, we review the agency's actions under the clearly erroneous standard. *Id.* (quoting *Zoss,* 1997 SD 93, ¶ 6, 566 N.W.2d at 843 (citing *Application of Northwestern Bell Tel. Co.,* 382 N.W.2d 413 (S.D.1986))). Issues involving questions of law are fully reviewable by this Court. *Id.* (quoting *Zoss,* 1997 SD 93, ¶ 6, 566 N.W.2d at 843 (citing *Matter of State & City Sales Tax Liab.,* 437 N.W.2d 209 (S.D.1989))). Further, "'[m]ixed questions of law and fact are also fully reviewable.'" *Id.* (quoting *Zoss,* 1997 SD 93, ¶ 6, 566 N.W.2d at 843 (citing *Permann v. Department of Labor, Unemp. Ins. Div.,* 411 N.W.2d 113 (S.D. 1987))).

[¶ 11.] Our standard of review for summary judgments is also well settled:

"Summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the nonmoving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. On the other hand, '[t]he party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment.'"

*Zuke v. Presentation Sisters, Inc.*, 1999 SD 31, ¶ 14, 589 N.W.2d 925, 928 (quoting *Greene v. Morgan, Theeler, Cogley & Petersen*, 1998 SD 16, ¶ 6, 575 N.W.2d 457, 459 (citations omitted)). Further, "[i]f there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." *Id.* (citing *Mack v. Kranz Farms, Inc.*, 1996 SD 63, ¶ 8, 548 N.W.2d 812, 814).

### DECISION

[¶ 12.] **1. Whether Department's Form 110 Agreement as to Compensation is res judicata as to Kermmoade's status as an employee even though an insurer's consent was given under an undisputed mistake of fact.**

[¶ 13.] In Department's decision, the administrative law judge (ALJ) found that the 1989 agreement between Kermmoade and St. Paul was "just that – an agreement." The ALJ relied on *Whitney v. AGSCO Dakota*, 453 N.W.2d 847 (S.D. 1990) and found " '[a]n agreed stipulation entered into between employer and employee, which is filed and approved by Department, may have the effect of a final determination.' " Under *Whitney*, therefore, the ALJ found "that the matters agreed in such agreements are *res judicata*." (Emphasis in original.) The ALJ noted that while Perkins/Club Valotte and Wausau may have been legally responsible for paying benefits to Kermmoade, the 1989 Agreement placed the responsibility towards Kermmoade on Quality Inn and St. Paul.

[¶ 14.] On appeal, the circuit court found that "the Agreement as to Compensation entered into between the parties Quality Inn, [St. Paul] and [Kermmoade], ... is *res judicata* as to all issues contained therein including the employer/employee relationship." (Emphasis in original.) The circuit court found that *Larsen v. Sioux Falls School Dist.*, 509 N.W.2d 703 (S.D.1993) and *Whitney* applied in this case to resolve this issue.

[¶ 15.] Quality Inn and St. Paul do not dispute that the Form 110 compensation agreements by Department have the same effect as adjudicated awards.[4] Instead, they contend that the naming of the wrong employer constitutes a mistake of fact and a Form 110 Agreement for Compensation may be set aside upon a showing of a mistake of fact. In support of this argument, they cite *Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, 575 N.W.2d 225, which discussed compromise agreements under SDCL 62-7-5 being given the same force as adjudicated awards. St. Paul argues that in *Sopko*, this Court held that " 'besides fraud and misrepresentation, "equitable grounds" may be sufficient to set aside a release.' " St. Paul further

---

**4.** It should be noted that the agreement entered into between Kermmoade, Quality Inn and St. Paul was not actually a Form 110 Agreement drafted by Department. Instead, the agreement was drafted by St. Paul and entitled "Agreement as to Compensation." The referee identified this distinction when he stated that "[t]he 1989 agreement is essentially identical to the [Department's] Form 110 (as it existed at that time)."

claims that "equitable grounds" is a sufficient basis to set aside the prior agreement because there was a mistake of fact.

[¶ 16.] In *Sopko*, claimant was severely injured when a bursting split-rim from a truck tire struck him in the head. 1998 SD 8, ¶ 2, 575 N.W.2d at 226. The workers' compensation insurer paid his medical expenses and temporary total disability benefits for six months while he was unemployed. Approximately two years later, Sopko attempted to petition Department for additional workers' compensation benefits; however, the parties ultimately entered into an agreement compromising all claims and releasing the insurer and employer from paying any expenses that may be incurred in the future. Thirteen years later, Sopko filed a petition with Department for additional compensation. After a hearing before Department, the agreement was set aside because "Sopko demonstrated a substantial, and unforeseen, post-release, physical change of condition." *Id.* ¶ 5, 575 N.W.2d at 227. On appeal, this Court noted that "[o]rdinarily, workers' compensation awards whether by agreement or adjudication are final unless the Department reserves jurisdiction." *Id.* ¶ 9, 575 N.W.2d at 229 (citations omitted). Further, we noted that "we have recognized in various circumstances an abiding

exception to the general rule of finality.... As early as 1921 this Court held that besides fraud and misrepresentation, 'equitable grounds' may be sufficient to set aside a release." *Id.* ¶ 10, 575 N.W.2d at 229.

[¶ 17.] St. Paul's reliance on *Sopko* is misplaced. A review of *Sopko* and the cases cited therein, reveal that they all dealt with the setting aside of a release based upon foreseeability of future injuries; that is not the question at issue we are facing in this case. *See Mills v. Spink Elec. Coop.*, 442 N.W.2d 243, 245–46 (S.D. 1989) (holding the waiver ineffective because claimant's "medical condition could not have been anticipated or foreseen at the time he executed the settlement"); *Novak v. C.J. Grossenburg & Son*, 89 S.D. 308, 316, 232 N.W.2d 463, 467 (1975) (concluding that when the consequences of an injury are newly discovered after the release is signed, the release may be set aside); *Chittenden v. Jarvis*, 68 S.D. 5, 11, 297 N.W. 787, 789–90 (1941) (holding that discovery of a disability after a workers' compensation award is entered will not justify reopening).[5] Further, *Sopko* is distinguishable from the present case because *Sopko* dealt with "[a]nalyzing SDCL 62–7–33 and 62–3–18 together" to determine whether "our Legislature intended to dis-

---

5. Kermmoade argues that "St. Paul should be estopped from revisiting the 110 Agreement in this case." In support of her argument, Kermmoade cites *Tulsa Rig, Reel & Mfg. Co. v. Millsap*, 619 P.2d 625 (Okla.1980). In *Tulsa Rig*, employer's insurer paid Millsap temporary total disability benefits for approximately 300 weeks. Millsap later petitioned for permanent and total disability at which time, employer realized that Millsap may have been a "loaned servant" on the day of the accident. Employer was not allowed to amend his answer and assert Millsap was not an employee. On appeal, the Oklahoma Supreme Court found that the employer was estopped from denying the employment status of Millsap and was bound by the stipulated mistakes it had made due to the lack of a thorough investigation. In discussing equitable estoppel, we have previously noted that,
"false representations or concealment of material facts must exist; the party to

whom it was made must have been without knowledge of the real facts; th[e] representations or concealment must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to his prejudice or injury. There can be no estoppel if any of these essential elements are lacking, or if any of them have not been proved by clear and convincing evidence."
*Heupel v. Imprimis Technology, Inc.*, 473 N.W.2d 464, 466 (S.D.1991) (quoting *L.R. Foy Constr. Co., Inc. v. South Dakota State Cement Plant Comm'n*, 399 N.W.2d 340, 344 (S.D. 1987) (citing *Taylor v. Tripp*, 330 N.W.2d 542, 545 (S.D.1983))) (alteration in original). Clearly, some of the elements for estoppel are lacking in this case. Based upon our disposition of issue one, we need not address the estoppel argument.

allow agreements foreclosing statutory rights to reopen in the event of changes in condition resulting from undiscovered or unforeseen consequences." *See Sopko,* 1998 SD 8, ¶ 13, 575 N.W.2d at 231. This case involves an insurer who is now trying to obtain relief for an inadequate investigation of a claim conducted prior to settlement.

[¶ 18.] St. Paul further contends that *Iowa Loan & Trust Co. v. Schnose,* 19 S.D. 248, 103 N.W. 22, 24 (1905) (quotation omitted), applies. There we held:

> No principle of equity is more firmly settled than that relief will be granted from the consequences of a mistake of fact, provided that such mistake is in reference to a fact material to the transaction, and was not occasioned by the party's own neglect of a legal duty. There is no doubt of this general rule.... It may be either a mistake as to a fact past or present, arising from unconscious ignorance or forgetfulness, or a mistake occasioned by a belief in the past or present existence of a fact. Under all circumstances, in order to obtain equitable relief, the mistake must have been unintentional.

St. Paul claims that they neither investigated nor had reason to investigate the issue of Kermmoade's employment status. In addition, " '[a] mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance ... unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.' " *LPN Trust v. Farrar Outdoor Adver.,* 1996 SD 97, ¶ 13, 552 N.W.2d 796, 799 (quoting *Knudsen v. Jensen,* 521 N.W.2d 415, 420 (S.D.1994) (quoting Restatement (Second) of Contracts § 157 (1982))).

[¶ 19.] We have often stated that once an agreement is accepted under the statute, the parties are bound to it. *See* SDCL 62–7–5; *Larsen,* 509 N.W.2d at 708; *Whitney,* 453 N.W.2d at 850; *Call v. Benevolent & Protective Order of Elks,* 307 N.W.2d 138, 139 (S.D.1981). In *Larsen,* we noted that,

> a settlement of a compensation claim which is properly approved per SDCL 62–7–5 operates as an adjudication of the facts agreed upon in the settlement *including the employer's obligation to pay compensation.* [Citation omitted.] Thus, a matter may not be later reopened absent an express reservation of jurisdiction by Department or a change in the employee's physical condition which change is a result of his working injury.

509 N.W.2d at 708 (emphasis added).

[¶ 20.] In the present case, Kermmoade merely signed the agreement which was drafted by St. Paul. She did not intentionally mislead St. Paul, but instead, timely filled out the injury report received from the hotel and returned the completed report to her supervisor. An "Employer's First Report of Injury" was subsequently filled out by the hotel and sent to St. Paul. After the report was filed, St. Paul drafted the settlement agreement without any further investigation into the matter. The agreement was properly forwarded to Department for review and was ultimately accepted. It is undisputed that Club Valotte was in the Ramada Inn and not the Quality Inn. Even the most scant of investigations by St. Paul could have determined that their insured, Quality Inn, did not have a Club Valotte on its premises. Despite St. Paul's lack of investigation, they argue that the agreement should be set aside on "equitable grounds." Eleven years after an accident, an innocent injured employee should not be forced to pay for an insurer's unilateral mistake. Regardless of whether St. Paul made a mistake, they drafted and entered into a binding agreement and the question of whether they are obligated to compensate Kermmoade is res judicata. The circuit court properly applied the law of South Dakota to the present case and granted summary judgment in favor of Kermmoade.

**[¶ 21.] 2. Does the Department have jurisdiction to determine insurance coverage issues in this matter.**

[¶ 22.] In the present case, Department held:

Having determined that Quality Inn and St. Paul are responsible for [Kermmoade's] worker's compensation benefits it follows that Perkin's Family Restaurant/Club Valotte and Wausau are not responsible *to [Kermmoade]* for those benefits. In reality, Perkin's Family Restaurant/Club Valotte and Wausau *may* have been legally responsible for those benefits. However, by voluntarily entering into the 1989 Agreement, Quality Inn and St. Paul undertook that responsibility *to [Kermmoade]*. Resolution of any remaining dispute between those two insurers is not properly within the jurisdiction of the Department of Labor. (Emphasis in original.)

[¶ 23.] St. Paul argues that Department has jurisdiction "to join other parties who may be liable for Kermmoade's benefits; it already did so with [Perkins] and Wausau." St. Paul contends that Department had authority to resolve the dispute between St. Paul and Wausau because "Department may perform 'any' act 'necessary' to perform its quasi-judicial functions . . . with every 'implied power' necessary to effectuate all of its 'express powers.' " *See Romey v. Landers*, 392 N.W.2d 415, 419 (S.D.1986). St. Paul claims that Department has the "inherent power to bring an additional party into a case whenever necessary for the 'complete administration of justice.' " *See Lambertson v. Westerman*, 200 Minn. 204, 273 N.W. 634, 635 (1937) (quotation omitted). Finally, St. Paul contends that "[e]ven if Quality Inn is bound by the mistaken Form 110 to acknowledge Kermmoade as an employee, it must be allowed to join her true employers in the workers' compensation proceeding to share in their joint liability."

[¶ 24.] Since we have already determined that St. Paul is bound to provide workers' compensation benefits to Kermmoade, the question now is whether Department has jurisdiction to determine whether any other workers' compensation insurer is liable to St. Paul for workers' compensation benefits based upon being Kermmoade's "true employer." In *Medley v. Salvation Army, Rapid City Corps.*, 267 N.W.2d 201 (S.D. 1978), this Court was faced with a dispute between two insurers as to the amount of each insurer's liability. In *Medley*, the Salvation Army obtained a workers' compensation policy from Aetna Life & Casualty Company (Aetna) for the policy year of October 1970 through October 1971. Upon expiration of this policy an audit was conducted to determine the premium amount for that year. The audit revealed that the Salvation Army already had another separate policy with Western Surety Company (Western) covering the Rapid City, South Dakota area; therefore, no coverage by Aetna was required for that area. On June 9, 1972, Medley, an employee of Salvation Army, was killed in a flood in Rapid City. Western admitted coverage for the claim, but contended that Aetna was also liable for coverage and contribution to the claim. The question as to liability between Aetna and Western was submitted to the deputy director of the Division of Labor and Management Relations. The director found in favor of Aetna and Western appealed to the circuit court. Aetna subsequently appealed the circuit court's reversal of the director's ruling.

[¶ 25.] On appeal, this Court noted that "[i]t is clear from the petition and all of the other papers before the deputy director of the Division of Labor and Management Relations that the only issue was whether [Western] and [Aetna] were equally liable to [Medley's widow.]" *Id.* at 203. We held that "[u]pon the narrow issue presented, the deputy director of the Division of Labor and Management Relations of the Department of Labor was without jurisdiction to hear and determine the petition of [Western][.]" *Id.* This Court concluded that "the proper rule to be applied" is

identified in Larson's Workmen's Compensation Law § 92.40:

> The general rule appears to be that, when it is ancillary to the determination of the employee's right, the compensation commission has authority to pass upon a question relating to the insurance policy, ... This is, of course, in harmony with the conception of compensation insurance as being something more than an independent contractual matter between insurer and insured.
>
> On the other hand, *when the rights of the employee in a pending claim are not at stake, many commissions disavow jurisdiction and send the parties to the courts for relief. This may occur when the question is purely one between two insurers*, one of whom alleges that it has been made to pay an undue share of an award to a claimant, and the award itself is not being under attack. [Footnote omitted.]

*Id.* (emphasis added). Further, "[t]he proper forum for a suit by [Western] against [Aetna] is in the circuit court, which has jurisdiction to determine questions of contribution, indemnity or subrogation raised by the respective insurers." *Id.*

[¶ 26.] Based upon our prior decision in *Medley*, the Department is without jurisdiction to hear the dispute solely between two insurers and employers. The proper forum for such a dispute is with the circuit court.[6] Further, "[t]his Court has the inherent power—and the duty—to see that the administration of justice is fair." *See Fullmer v. State Farm Ins. Co.*, 514 N.W.2d 861, 868 (S.D.1994) (Henderson, J., concurring in part, dissenting in part). While St. Paul is legally bound to pay Kermmoade workers' compensation benefits under the agreement, it is only fair that St. Paul have the opportunity to prove who the true employer is and seek contribution from that employer for the benefits

St. Paul owes Kermmoade. It is within this Court's discretion to remand this action to the circuit court with instructions to determine separately this issue because the jurisdiction to determine the issue is with the circuit court.

[¶ 27.] There is no doubt that Kermmoade is entitled to recover workers' compensation benefits from St. Paul and Quality Inn based upon their written agreement. Whether St. Paul and Quality Inn can prove Perkins and Wausau were the "true employers" and therefore, liable to St. Paul and Quality Inn for contribution, has yet to be determined. We reverse and remand this case back to the circuit court to determine whether St. Paul is entitled to any recovery or contribution from a third party.

[¶ 28.] Based upon the above disposition, we need not address the last issue.

[¶ 29.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.

---

6. This Court expresses no opinion on any defenses involving the merits which might be raised on remand.